*133 OPINION *
VANASKIE, Circuit Judge.
Plaintiff-Appellant Candice Watkins appeals from the District Court’s order denying her motion.for reconsideration of an order dismissing her First Amended Complaint, without prejudice, and granting a motion to dismiss her Second Amended Complaint, with prejudice. Watkins contends that the District Court erred in holding that the omission of beverage prices from restaurant menus could not give rise to liability under New Jersey’s Truth-in-Consumer Contract, Warranty and Notice Act (TCCWNA), N.J. Stat. Ann. § 56: 12-15. We "reject Watkins’s argument and will affirm for substantially the same reasons set forth by the District Court.
I.
Defendant-Appellee DineEquity, Inc. is the parent company of both Defendant-Appellee Applebee’s International, Inc. and Defendant-Appellee International House of Pancakes, LLC.[1] Patrons at Defendants’ restaurants choose from menus that list, but do not provide the prices of, “soda, beer, mixed drinks, wine, coffee, and ... other beverages.” (App.251.) At the time this action was initiated, Defendants owned and operated 96 restaurants in the State of New Jersey.
Watkins, a New Jersey resident, “has purchased both soft drink beverages and beers that were offered on Defendants’ menus without prices.” (App.252.) On October 31, 2011, Watkins filed this putative class action in New Jersey state court on behalf of a proposed class consisting of all customers who purchased beverages with undisclosed prices at Defendants’ restaurants in the State of New Jersey. Watkins’s state court complaint alleged that omitting beverage prices from restaurant menus violates both the New Jersey Consumer Fraud Act (CFA), N.J. Stat. Ann. § 56:8-2 et seq., and TCCWNA.
After Defendants removed the case to federal court, Watkins filed her First Amended Complaint, which dropped her claim under the CFA, leaving only a single count under TCCWNA. On August 28, 2012, the District Court granted Defendants’ Rule 12(b)(6) motion to dismiss the First Amended Complaint, without prejudice, finding that Watkins failed to state a viable claim for relief.
The District Court held that a restaurant menu is a writing covered by TCCWNA. But after a careful examination of TCCWNA’s language and legislative history, as well as caselaw from New Jersey state courts and the United States District Court for the District of New Jersey, the District Court concluded that TCCWNA encompasses only illegal provisions in writings covered by the statute, and does not make actionable omissions, including the omission of beverage prices from a restaurant menu.
In response, Watkins filed both a motion for reconsideration and a Second Amended Complaint. Defendants again moved to dismiss. In an order and accompanying opinion filed January 31, 2013, the District Court denied the motion for reconsideration of its order dismissing the First Amended Complaint, and granted Defendants’ motion to dismiss, with prejudice, the Second Amended Complaint, observing that “the Second Amended Complaint con *134 tains no new factual allegations that plausibly present a claim for liability under the TCCWNA.” (App.280.) This appeal followed.
II.
The District Court had jurisdiction pursuant to 28 U.S.C. § 1332(d)(2). We have appellate jurisdiction under 28 U.S.C. § 1291. “[W]e review de novo a district court’s grant of a motion to dismiss for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6).” Ballentine v. United States, 486 F.3d 806, 808 (3d Cir.2007). “To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to ‘state a claim to relief that is plausible on its face.’ ” Ashcroft v. Iqbal, 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007)). We review the denial of a motion for reconsideration for abuse of discretion. See Lazaridis v. Wehmer, 591 F.3d 666, 669 (3d Cir.2010) (per curiam).
A.
Watkins’s primary argument on appeal is that the District Court erred in concluding that the omission of beverage prices from restaurant menus is not actionable under TCCWNA. The New Jersey legislature enacted TCCWNA in 1981 “to prevent deceptive practices in consumer contracts by prohibiting the use of illegal terms or warranties in consumer contracts.” Kent Motor Cars, Inc. v. Reynolds & Reynolds Co., 207 N.J. 428, 25 A.3d 1027, 1044 (2011). The pertinent part of the statute reads:
No seller ... shall in the course of his business offer to any consumer or prospective consumer ... or display any written ... notice or sign ... which includes any provision that violates any clearly established legal right of a consumer or responsibility of a seller ... as established by State or Federal law at the time the offer is made or the consumer contract is signed or ... notice or sign is given or displayed.
N.J. Stat. Ann. § 56: 12-15.[2] The statute further provides that “[a]ny person who violates the provisions of this act shall be liable to the aggrieved consumer for a civil penalty of not less than $100.00 or for actual damages ... together with reasonable attorney’s fees and court costs.” Id. § 56:12-17.
TCCWNA does not establish consumer rights or seller responsibilities. Rather, the statute bolsters rights and responsibilities established by other laws. TCCWNA creates liability whenever a seller presents a consumer with a covered writing that “contains terms contrary to any established state of federal right of the consumer.” Shelton v. Restaurant.com, 214 N.J. 419, 70 A.3d 544, 558 (2013). The rights and responsibilities to be enforced by TCCWNA are drawn from other legislation. One such piece of legislation is the CFA. See Bosland v. Wamock Dodge, Inc., 396 N.J.Super. 267, 933 A.2d 942, 949 (N.J.Super.Ct.App.Div.2007), aff'd, 197 N.J. 543, 964 A.2d 741 (2009) (A covered writing containing a provision that “violates a clearly established legal right under the CFA regulations is also a violation of the TCCWNA.”). Watkins asserts that the omission of beverage prices from Defendants’ menus violates the CFA, and *135 that the menus thus violate TCCWNA. We disagree.
To state a claim under TCCWNA, a plaintiff must allege each of four elements: (1) the plaintiff is a consumer; (2) the defendant is a seller; (3) the “seller offers a consumer a contract” or gives or displays any written notice, or sign; and (4) the contract, notice or sign includes a provision that “violate[s] any legal right of a consumer” or responsibility of a seller. Bos-land, 933 A.2d at 949. Watkins satisfies the first three elements. Watkins is a consumer, Defendants are sellers, and a restaurant menu constitutes a written offer, notice or sign for TCCWNA purposes.
This appeal focuses on the fourth element, which requires Watkins to show that Defendants’ menus “inelude[ ][ a] provision that violates [a] clearly established legal right of a consumer or responsibility of a seller-” N.J. Stat. Ann. § 56: 12-15. According to Watkins, Defendants have a legal obligation under the CFA, id. § 56:8-2.5, to post beverage prices on their restaurant menus. This provision of the CFA states:
It shall be unlawful for any person to sell, attempt to sell, or offer for sale any merchandise at retail unless the total selling price of such merchandise is plainly marked by stamp, tag, label or sign either affixed to the merchandise or located at the point where the merchandise is offered for sale.
Id. Watkins asserts that Defendants’ alleged violation of this legal obligation can serve as the predicate for a claim under TCCWNA, despite the fact that the purported violation stems from an omission, rather than an inclusion of information.
We are not aware of any case from the New Jersey Supreme Court touching on the issue of whether the omission of beverage prices from a restaurant menu falls within TCCWNA’s prohibition against the inclusion of any provision in a covered writing that violates a íegal right of a consumer or responsibility of a seller. Because this claim appears to be a matter of first impression under controlling New Jersey law, we, as a federal court sitting in diversity, must predict how the New Jersey Supreme Court would resolve the issue. Orson, Inc. v. Miramax Film Corp., 79 F.3d 1358, 1373 n. 15 (3d Cir.1996). As always in deciding questions of statutory interpretation, we begin with the text of the statute itself.
New Jersey courts “ascribe to the statutory words their ordinary meaning and significance, and read them in context with related provisions so as to give sense to the legislation as a whole.” DiProspero v. Penn, 183 N.J. 477, 874 A.2d 1039, 1048 (2005) (citations omitted). A plain reading of the phrase, “which includes any provision,” indicates that the New Jersey legislature intended TCCWNA to cover only the inclusion of illegal provisions, and not omissions.
In support of her argument that TCCWNA covers omissions, Watkins relies heavily on two opinions from the intermediate appellate court in New Jersey: Bosland, supra,[3] and Dugan v. TGI Friday’s, Inc., No. A-3098-10T2, 2011 WL 5041391 (N.J.Super.Ct.App.Div. Oct. 25, 2011). We agree with the District Court that both cases are distinguishable.
In Bosland, the defendant car dealer presented the plaintiff car buyer with a written invoice containing a $117 “registra *136 tion fee.” 933 A.2d at 943. After purchasing the vehicle, the plaintiff discovered that the fee on the written invoice was $20 greater than the registration fee actually charged by the New Jersey Motor Vehicle Commission. As a result of the $20 overcharge, the plaintiff filed a complaint alleging that the defendant car dealership had violated the CFA as well as TCCWNA. The Bosland plaintiffs complaint was based on regulations promulgated pursuant to the CFA, N.J.A.C. §§ 13:45A-26B.l, 26B.2(a)(2)(a)(2)(i), which require car dealers to itemize and disclose any documentary service fees they charge consumers on top of the official Motor Vehicle Commission registration fee. She alleged that by including in her invoice a $117 “registration fee,” the defendant charged her $20 more than the fees it was required to submit to the Motor Vehicle Commission witho.ut itemizing the overcharge, as required by N.J.A.C. § 13:45A-26B.2(a)(2)(i). In other words, the plaintiff in Bosland alleged that the defendant car dealer violated the CFA by including in her invoice a provision that misled her into believing that she was required to pay the New Jersey Motor Vehicle Commission $20 more than she actually was, in direct violation of regulations promulgated under the CFA.
The Bosland plaintiff alleged facts sufficient to support a claim that her invoice included provisions which violated the CFA, and the New Jersey intermediate appellate court found that the plaintiff has also alleged a violation of TCCWNA. 933 A.2d at 949. Unlike this case, the plaintiff in Bosland had alleged a viable claim under the CFA and her grievance concerned the inclusion of an illegal provision, not an omission. We therefore agree with the District Court that Bosland “does not shed light on whether a pure omission, without an allegation of overcharging the consumer, may constitute a stand-alone 'violation of the TCCWNA.” (App.275.)
Dugan, the other case relied upon by Watkins, is also distinguishable. There, a TGI Friday’s patron was charged $2.00 for a Coors Light at the bar and $3.59 for the same drink after moving to a table within the same restaurant. Dugan, 2011 WL 5041391, at * 1. The patron brought a complaint, contending that “the undisclosed price differential for the same product based upon where in the restaurant ... the item is served” violated both the CFA and TCCWNA. Id. The trial court denied TGI Friday’s motion to dismiss and the Appellate Division of the New Jersey Superior Court affirmed.
Watkins asserts that the unconscionable business practice giving rise to CFA and TCCWNA liability in Dugan was TGI Friday’s violation of the legal obligation to disclose beverage prices on menus. She argues that the same practice gives rise to TCCWNA liability here. But the unconscionable 'practice that gave rise to liability in Dugan was the “secret switch” in beverage prices between the bar and table, not the omission of beverage prices from the table menu. 2011 WL 5041391, at * 7. Dugan concerned the omission of beverage prices on the menu to make “stealth price adjustments,” which were designed to “intentionally mislead[ ] consumers.” Id. at * 6. There is no allegation of similar duplicity in the matter before us.
' In sum, Watkins has not cited any authority indicating that TCCWNA is triggered by the mere omission of beverage prices from a restaurant menu. The cases she relies upon for TCCWNA liability involve affirmative offers or pricing, included in covered writings, that are rendered inaccurate or fraudulent by the circumstances of their presentation. We therefore reject Watkins’s argument that her TCCWNA claim is premised upon an un- *137 conseionable business practice that is legally indistinguishable from the business practices giving rise to liability in Bosland and Dugan.
B.
We also conclude that the District Court did not abuse its discretion in denying Watkins’s motion for reconsideration. Under Federal Rule of Civil Procedure 59(e) and New Jersey Local Rule of Civil Procedure 7.1, a district court may grant a motion for reconsideration if: (1) an intervening change in controlling law has occurred; (2) new evidence has become available; or (3) reconsideration is necessary to correct a clear error of law or prevent manifest injustice. N. River Ins. Co. v. CIGNA Reinsurance Co., 52 F.3d 1194, 1218 (3d Cir.1995). Watkins’s motion was based solely on a paragraph in Dugan that the District Court had thoroughly considered in its opinion dismissing the First Amended Complaint. The District Court therefore acted within its discretion in refusing to reconsider its dismissal order.
III.
Accordingly, for substantially the reasons set forth in the District Court’s thorough and well-reasoned opinions dismissing both the First and Second Amended Complaints, we will affirm the District Court’s order filed January 31, 2013.

 This disposition is not an opinion of the full court and pursuant to I.O.P. 5.7 does not constitute binding precedent.

. Throughout this opinion, we collectively refer to DineEquity, Inc. and its wholly owned subsidiaries, Applebee’s International, Inc., and International House of Pancakes, LLC, as "Defendants.”

. A written offer, notice or sign encompassed by TCCWNA will be referred to as a “covered writing."

. The Supreme Court of New Jersey affirmed the Appellate Division's decision in Bosland, but its opinion is limited to the question of whether the plaintiff was required to seek a refund before bringing a CFA claim. See 964 A.2d at 743. The New Jersey Supreme Court did not address the scope of liability under TCCWNA.